UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**

MAR 3 1 2008

CLERK

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | CR. 07-40061 |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | **REPORT and RECOMMENDATION** |
| | * | |
| JEFFERY JON QUAST, | * | |
| | * | |
| Defendant. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Pending is Defendant's Motion to Dismiss Superceding Indictment (Doc. 50). A hearing was held on Tuesday, March 25, 2008.   Defendant was personally present and represented by his counsel of record, Ms. Stephanie Amiotte. The Government was represented by Assistant United States Attorney Jeff Clapper.  The Defendant, Jeffery Jon Quast, testified at the hearing. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing.  Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Dismiss be **GRANTED** in part and **DENIED** in part.

## JURISDICTION

Defendant is charged in a Superceding Indictment  with two counts of making a false statement in during an attempted firearms purchase in violation of 18 U.S.C. § 922(a)(6). The pending Motion to Dismiss was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated November 29, 2006.

## FACTUAL BACKGROUND

Defendant is charged in a Superceding Indictment with two counts of making false statements during an attempted firearm purchase in violation of 18 U.S.C. § 922(a)(6).  Count 1 charges:

> On or about January 18, 2007, at Sioux Falls, in the District of South Dakota, the defendant, Jeffery Jon Quast, in connection with his attempted acquisition of a firearm from a federally licensed firearms dealer, Scheel's, knowingly made a false and fictitious written statement to Scheel's, which statement was intended and likely to deceive Scheel's as to a fact material to the lawfulness of such attempted acquisition of the said firearm to the defendant, by representing that he had never been convicted in any court of a misdemeanor crime of domestic violence, when in fact, as the defendant then well knew, he had been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(a)(6).

Count 2 charges:

> On or about January 18, 2007, at Sioux Falls, in the District of South Dakota, the defendant, Jeffery Jon Quast, in connection with his attempted acquisition of a firearm from a federally licensed firearms dealer, Scheel's, knowingly made a false and fictitious written statement to Scheel's, which statement was intended and likely to deceive Scheel's as to a fact material to the lawfulness of such attempted acquisition of the said firearm to the defendant, by representing that he was not subject to a court order restraining him from harassing, stalking or threatening his child or intimate partner or the child of such partner, when in fact, as the defendant then well knew, he was subject to such an protection order, in violation of 18 U.S.C. § 922(a)(6).

Although no documents were offered into evidence at the hearing, several documents were attached to the parties' briefs, and have been considered by the Court.  Those documents will be referred to by title and document number as appropriate.  Mr. Quast testified that on September 23, 2006, he spent all day and into the evening drinking alcohol with Kelly Blum.  He said that when they started doing shots "things got out of hand."  Mr. Quast was arrested in the early morning hours of September 24th, and jailed in the Freemont County, Iowa Jail.  He was originally charged with Domestic Abuse Assault in violation of Iowa Code Section 708.1 and 708.2A(2)(a).  *See,* Doc. 61-2 EX 1 (Record of Initial Appearance).

Mr. Quast explained that although the Record of Initial Appearance indicates a Magistrate Judge informed him of the nature of the charges against him, the right to remain silent, and the right to counsel including appointed counsel if he was indigent, this "initial appearance" did not occur in

a courtroom. Nor was it memorialized by a court reporter or a recording. Instead, the Magistrate Judge visited Mr. Quast at the jail the morning after his arrest to accept his not guilty plea and set bail. Mr. Quast's version of events is confirmed by a computer printout of the Magistrate Judge's calendar which indicates the Judge saw Mr. Quast at the jail, accepted a not guilty plea, and set bail at $325.00. *See*, Doc. 61-2, EX 2. Mr. Quast signed the Record of Initial Appearance which acknowledged that the Magistrate Judge advised him of nature of the charge against him and of his right to counsel. EX 1. He testified, however, that he does not specifically recall the Magistrate Judge talking to him about appointed or retained counsel. Mr. Quast also testified that he was probably still intoxicated when the Magistrate Judge visited him in the jail.

As a result of the Initial Appearance, a "no contact order" was issued. EX 1, EX 2, EX 3. The Order indicates it was issued and served on September 24, 2006. EX 3. Mr. Quast testified that the Chief Deputy served the protection order upon him. The written order recites that Mr. Quast was provided with notice and an opportunity to be heard. *Id.* It further recites that a domestic abuse assault has occurred, and that Mr. Quast's presence in the alleged victim's residence poses a threat to the safety of the alleged victim, persons residing with the alleged victim, or members of the alleged victim's family. It prohibits him from communicating with the protected party, and from threatening, stalking, molesting, attacking, harassing, or otherwise abusing the protected party or any persons residing with the protected party or any members of her family. *Id.* The box on the form which prohibits Mr. Quast from possessing firearms as a condition of his release, and requires him to surrender any firearms to the County Sheriff, is not checked. *Id.*

Mr. Quast posted bond and was released from jail. Mr. Quast worked construction. It rained on October 10, 2006, cutting Mr. Quast's workday short. He decided to go to the courthouse to see if there was anything he could do to resolve the criminal charges against him. The Magistrate Judge was in the courthouse. Mr. Quast and the Magistrate Judge conversed, and were eventually joined by the prosecutor. The prosecutor and the Magistrate Judge asked Mr. Quast to leave the room for a moment, and when he returned, the prosecutor and the Magistrate Judge proposed a plea deal to reduce the domestic abuse charge to simple assault. As Mr. Quast testified, "the domestic went away." There was no discussion about constitutional rights, or whether Mr. Quast should have an attorney. Mr. Quast did not sign any type of waiver of rights or any other documents. Mr. Quast

had not consulted any attorney before he agreed to the plea. Mr. Quast explained that the prosecutor and the Magistrate were concerned that if he (Quast) had a domestic assault conviction, he would never be able to obtain employment at a local governmental facility. A simple assault conviction, however, would not affect his employment.

The protection order was also discussed during the October 10, 2006 meeting which was initiated by Mr. Quast. In Mr. Quast's words, "they asked if I cared if they left the restraining order on for the remainder of a year." He did not know he could call witnesses to testify about the protection order issue, and nobody told him he could. It was never suggested to him that he may be entitled to a separate hearing about the protection order. Mr. Quast agreed to the extension of the protection order, because by that time Ms. Blum was in the penitentiary anyway, and he didn't ever want to see her again.

Mr. Quast acknowledged he was present on October 10, and he understood and agreed during that meeting that the protection order would be extended for a year. Mr. Quast also advised, however, that he did not receive any advance notice that the subject of the protection order or the possibility of extending the duration of the protection order was going be discussed during the October 10 meeting.

The Government alleges that on January 18, 2007, 100 days after he entered a plea of guilty to simple assault in Freemont County Iowa, Mr. Quast came to Scheel's in Sioux Falls, South Dakota and in an attempt to acquire a firearm he made false written statements (1) that he had never been convicted of a misdemeanor crime of domestic violence; and (2) that he was not subject to a court order restraining him from harassing, stalking, or threatening his child or an intimate partner or child of such partner.

Mr. Quast moves to dismiss the indictment. He alleges it is insufficient for the following reasons: (1) he did not knowingly and intelligently waive his right to counsel when he pleaded guilty to simple assault, so he has not been convicted of a "misdemeanor crime of domestic violence" as that term is defined by 18 U.S.C. § 921(a)(33)(B)(i)(I); and (2) the protection order in question was insufficient to render the sale of a firearm to him unlawful, because it was issued

without proper notice and without a proper hearing pursuant to 18 U.S.C. § 922 (d)(8).[1]

## DISCUSSION

### Burden of Proof

The sufficiency of an indictment is a question of law for the Court. *United States v. Zangger*, 848 F.2d 923, 924 (8th Cir. 1988). In a collateral attack on an uncounseled conviction, the burden is on the defendant to prove he did not competently and intelligently waive his right to the assistance of counsel. *Iowa v. Tovar*, 124 S.Ct. 1379, 1390, 541 U.S. 77, 92, 158 L.Ed.2d 209 (2004).

**1.    Whether Mr. Quast Had Been Convicted of A "Misdemeanor Crime of Domestic Violence."**

Count 1 of the indictment charges Mr. Quast knowingly made a false statement in connection with the attempted acquisition of a firearm because he represented he had never been convicted of a misdemeanor crime of domestic violence. Mr. Quast asserts Count 1 should be dismissed because his simple assault conviction does not meet the legal definition of a "misdemeanor crime of domestic violence."

The definition of term "misdemeanor crime of domestic violence" is found at 18 U.S.C. § 921 (a) (33). That section provides in relevant part (emphasis added):

**(33)(A)** Except as provided in subparagraph (C) ,the term "misdemeanor crime of domestic violence means an offense that–
> **(i)**    is a misdemeanor under Federal or state law; and
> **(ii)**    has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent or guardian, or by a person similarly situated to a spouse, parent or guardian of the victim.

---

[1] Mr. Quast also asserted a third ground for dismissal in his papers: that he has not been convicted of a "misdemeanor crime of domestic violence" because his simple assault conviction never caused him to lose his civil rights under Iowa law. Therefore, his civil rights have effectively been "restored" pursuant to 18 U.S.C. § 921(a)(33)(B)(ii). He did not pursue this argument at the hearing. It is rejected here without further discussion, because it has been flatly rejected by both the Eighth Circuit and the United States Supreme Court. *See*, *United States v. Smith*, 171 F.3d 617, 623-24 (8th Cir. 1999); *Logan v. United States*, 128 S.Ct. 475 (2007).

> **(B)(i)**   A person shall not be considered to have been convicted of such an offense for purposes of this chapter unless–
> (I) The person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case;

\*\*\*

No Subparagraph (C) was enacted in subsection (a)(33). The reference to subparagraph (C) is a typographical error, and should be to subparagraph (B). The parties agree Mr. Quast does not fit the definition of a person previously convicted of a misdemeanor crime of domestic violence unless he knowingly and intelligently waived his right to counsel on the underlying misdemeanor simple assault charge.

The question whether Mr. Quast knowingly and intelligently waived his right to counsel for the predicate misdemeanor offense is a question of law for the court to decide rather than an issue to be decided by the jury. *See, United States v. Smith*, 171 F.3d 617, 622 (8th Cir. 1999) (defendant waived right to counsel under 18 U.S.C. § 921(a)(33)(B) as a matter of law); *United States v. Pfeifer*, 371 F.3d 430, 434 (8th Cir. 2004) ( noting that the Courts have addressed the issue directly have interpreted § 921(a)(33)(B)(i) as creating a legal definition to be decided by the court as a matter of law rather than by jury as an element of the crime); *United States v. Hartsock*, 347 F3d 1,7 (1st Cir. 2003) (same).

The Sixth Amendment guarantees a criminal defendant who faces incarceration the right to counsel at all critical stages of the criminal process.[2] *Iowa v. Tovar*, 541 U.S. 77, 87, 124 S.Ct. 1379, 1387, 158 L.Ed.2d (2004). A plea hearing is such a "critical stage." *Id.* A criminal defendant, however, may waive representation. While the Constitution does not require legal representation, it does require that any waiver of the right to counsel be knowing, voluntary and intelligent. *Id.* A waiver is intelligent when the defendant "knows what he is doing and his choice is made with eyes open." *Id.* (citations omitted). The information the court must provide to meet this standard in each case depends on a range of factors including the defendant's education or sophistication, the nature of the charge, and the stage of the proceeding. *Id.*, 541 U.S. at 88, 124 S.Ct. at 1387. If a defendant decides to proceed to trial without counsel, warnings about the associated dangers must be

---

[2]Both the misdemeanor charge with which Mr. Quast was originally charged and the one to which he ultimately pleaded guilty posed the threat of jail time. *See* I.C.A. 903.1.

"rigorously" conveyed. 541 U.S. at 89, 124 S.Ct. at 1388. At earlier stages of the proceedings, however, a less rigorous or formal colloquy may suffice. *Id.* In *Tovar* (a case also arising out of Iowa) the defendant entered a guilty plea without counsel. Before accepting the plea the trial judge explained on the record that Tovar was entitled to be represented by a lawyer who could help him at trial. *Id.* 541 U.S. at 83, 124 S.Ct. at 1384.

In *Tovar*, the Supreme Court stated that "a defendant must be alerted to his right to the assistance of counsel in entering a plea." *Id.* 541 U.S. at 91, 124 S.Ct. at 1389. Additionally, the Court noted "the law ordinarily considers a waiver knowing, intelligent and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances–even though the defendant may not know the *specific detailed* consequences of invoking it." *Id.* 541 U.S. at 92, 124 S.Ct. At 1389. The United States Supreme Court declined, however, to require the specific admonitions urged by Tovar . Tovar urged he should have been advised that there may be defenses unknown to a self-represented person, and the danger of proceeding un-represented is that these unknown defenses may be overlooked. He also urged that he should have been advised that by waiving his right to counsel, he lost the opportunity for an independent opinion about the wisdom of his guilty plea. The Supreme Court held that, at the plea stage, such specific admonitions are not required for a valid waiver. *Tovar*, 541 U.S. at 94, 124 S.Ct. at 1390.

The Eighth Circuit has also examined the necessary elements of an intelligent, voluntary waiver of counsel. "A waiver is intelligent only if the defendant is made aware of the dangers and disadvantages of self-representation at the time of the waiver, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *United States v. Pfeifer*, 371 F.3d 430, 434 (8th Cir. 2004). The *Pfeifer* Court cited *Tovar* and acknowledged that the facts and circumstances of each case must be considered to determine whether a waiver of the right to counsel is knowing and intelligent for purposes of § 921(a)(33)(B). *Id.* at 435. The following on the record discussion convinced the Court the defendant in *Pfeifer* waived his right to counsel with "eyes open.":

COURT:        You're charged with simple assault. Do you have a lawyer?
DEFENDANT:        No, I don't.
COURT:        Do you want a lawyer to represent you?

-7-

DEFENDANT:      No, I don't.
COURT:          You understand that you're entitled to have a lawyer during all stages
                of these proceedings.  If you don't have money or property to hire a
                lawyer, the Court will appoint one for you at county expense.  You
                understand that?
DEFENDANT:      I understand that.
COURT:          You want to proceed without a lawyer?
DEFENDANT:      I want to proceed without a lawyer.

*Id.* at 435.  This rather brief colloquy, together with an earlier general explanation about the rights

that would be forfeited by pleading guilty (right to a jury trial, to confront witnesses, right not to

testify against himself) was sufficient for purposes of § 921(a)(33)(B).  Important to the Court was

that the judge "repeatedly" asked the defendant if he wanted to proceed without an attorney, and the

defendant repeatedly indicated he did.  The Court also noted that "regardless of what [the defendant]

knew about the future consequences of his conviction, it simply does not appear that his waiver of

counsel was anything other than knowing and intelligent." *Pfeifer*, 371 F.3d at 436.


        In this case, the Mr. Quast's testimony varied regarding the admonitions he received during

his "initial appearance" with the Magistrate Judge at the Freemont County Jail on September 24,

2006.   The signed, written form which is the only record  of the event indicated the Magistrate

Judge advised Mr. Quast of his right to counsel, including appointed counsel if indigent.    The

Magistrate Judge wrote "n/a" in the space indicating Mr. Quast requested appointed counsel and left

blank the space indicating Mr. Quast had or would  hire his own counsel.   "A written waiver of

counsel can be the basis for a valid waiver." *United States v. Smith*, 171 F.3d 617, 622 (8th Cir.

1999).  The form memorializing Mr. Quast's initial appearance is not, however,  a waiver form.

None of the check marks on the form indicate  Mr. Quast  waived his right to counsel.


        More importantly, Mr. Quast does  not  recall any conversation with the Magistrate Judge

about his right to counsel on the date of his  guilty plea. The only record of Mr. Quast's plea hearing

(Doc. 61-2, EX 5) makes no mention of any discussion about  Mr. Quasts's right to counsel.   "A

defendant must be alerted to his right to the assistance of counsel in entering a plea." *Iowa v. Tovar*,

541 U.S. at 91, 124 S.Ct. at 1389 (2004). No matter what other facts or circumstances are

considered, the  complete absence during the plea hearing of any discussion about  the right to

assistance of counsel precludes a finding that Mr. Quast's waiver was made with "eyes open."  For

this reason, Mr. Quast's simple assault conviction does not meet the definition of a "misdemeanor crime of domestic violence" pursuant to  18 U.S.C. § 921 (a) (33).  Count 1 of the Indictment, therefore, should be dismissed.

### 2.     Whether the Protection Order Was Sufficient To Render the Sale of a Firearm to Mr. Quast Unlawful

Mr. Quast asserts Count 2 of the Indictment should be dismissed because it alleges he violated 18 U.S.C. § 922(a)(6).  That section criminalizes false statements to a firearms dealer in connection with the attempted acquisition of a firearm.  The conduct alleged in Count 2 is Mr. Quast's denial of the existence of a qualifying protection order against him.  Mr. Quast alleges he did not make a false statement, because the protection order against him did not  prohibit the sale of a firearm to him pursuant to 18 U.S.C. § 922(d)(8)(A).  That section states:

> **(d)** it shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person–
> \*\*\*
>     **(8)** is subject to a court order that restrains such person from harassing, stalking or threatening an intimate partner[3] of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that–
> > **(A)** was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate;

The protection order was initially issued on the date of Mr. Quast's arrest (September 24, 2006).  It was served upon him on that date by a Deputy Sheriff.  Although the Protection Order recites that it was issued after "Defendant [had] been provided with reasonable notice and opportunity to be heard," and the record of initial appearance indicates that it was issued during that proceeding (Doc. 61-2, EX 1), there was no evidence presented about whether the Magistrate Judge discussed the protection order with Mr. Quast during his initial appearance, or whether he actually had any opportunity to be heard before it was issued on September 24th.

Mr. Quast's testimony about the discussion of the protection order during his plea hearing on October 10, however, was very explicit.  He initiated the October 10th meeting which evolved

---

[3]Mr. Quast does not dispute that Ms. Blum was an intimate partner.

into a plea negotiation/hearing. He acknowledged that by then, he was fully aware of the protection order. He testified that in the course of the discussion about reducing the charges against him to simple assault, the prosecutor and the Magistrate asked whether he would be agreeable to leaving the protection order in effect . He agreed because he knew Kelly Blum was in the penitentiary, and he didn't care if he ever saw her again anyway. While the October 10 "hearing" which resulted in the continuation of the protective order was unquestionably informal, it met the minimal requirements of 18 U.S.C. § 922(d)(8)(A). Specifically, he had actual notice  and the opportunity to participate. Mr. Quast's suggestion that a § 922(d)(8)(A) hearing requires  advance (rather than actual) notice, the presentation of evidence or the calling of witnesses  has been rejected by the Courts. *See United States v. Lippman*, 369 F.3d 1039, 1042 (8th Cir. 2004); *United States v. Young*, 458 F.3d 998, 1006 (9th Cir. 2006).   For these reasons, the protection order against Mr. Quast met the statutory definition of 18 U.S.C. § 922(d)(8)(A).  Count 2 of the Indictment, therefore, should not be dismissed.

## CONCLUSION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Defendant's Motion to Dismiss Indictment (Doc. 50) be **GRANTED** in part and **DENIED** in part as follows: Count 1 of the Indictment should be dismissed, Count 2 of the Indictment should not be dismissed.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)
*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this **31** day of March, 2008.

BY THE COURT:

John E. Simko
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk

By_____, Deputy
       (SEAL)